25-2084 United States v. Hernandez. You may proceed. May it please the court. My name is Joel Myers and I represent Anthony Hernandez. With the court's permission, I would like to reserve two minutes for rebuttal. I'm asking the court to reverse Mr. Hernandez's conviction because on these set of facts, no rational juror could have concluded that the victim in this case was assisting a federal officer. Extending the protections of 18 U.S.C. 111 in a case like this would not further the protection of either federal officers or federal functions. 18 U.S.C. 1114 designates a victim as any officer employee of the United States or any agency in the branch of the United States government or any person assisting such an officer or employee in performance of such duties or an account of that assistance. Now, whether someone qualifies as a federal officer is certainly a question of law, but whether someone was engaged in the official duties or assisting that person is a question of fact for the jury. So how does the government then, are they allowed to hire a private contractor under your interpretation of the statute? Well, they did indeed hire a private contractor and that was CoreCivic, but it wasn't even the United States. Is that okay? Yes, I mean we have cases that obviously allow that to happen all over the country. I'm not asking the court to upend the litany of cases, even cases that have been before this court where we have private jailers. That's not what we have here. I think a private jailer, I'm not up here today to try to upend that. We know that the Marshal Service doesn't operate any facilities within the United States at all. I think it would be unworkable if we were to say, if this court was to say that they can't hire any private contractors as jail guards. If the Marshal Service can hire a private contractor, can't the private contractor subcontract it out and still have the protections of the statute for the people managing the  I think it depends. I can envision a circumstance under which that could happen, but on these set of facts, I don't believe so. What makes these facts a problem compared to just another subcontractor relationship? And that's where I think we need to look at the contract and what was the victim hired for. In this instance, the victim was hired by CoreCivic to do auditing and any other tasks that may come up. But the core function, as he testified at trial and it was written in his contract, was the auditing of what CoreCivic was doing. When he was attacked, wasn't he engaged in the activity, the duties of a jailer? Yes, yes. He was engaged in doing security rounds. Absolutely he was. But that was So it doesn't really matter what his job description was on paper then? I would think it certainly does. That, to me, evidenced a personal frolic of his, that he decided he was going to go do security rounds. What his official duties and responsibilities should have been limited by the contract. The fact that he then decided to do a core function of either the jail or the Marshal. Wasn't he asked to do the jailer duties by his superiors? That's what he says. He said he was asked by the private contractor there, again in this case CoreCivic, still two parties removed from the Marshal service in this case. Was there any evidence he wasn't asked? No. I mean, all he did was he said that the warden asked him to do that. I mean, because a frolic sort of suggests something more whimsical, or the guard was going out and he said, hey, I want to go with you, or let me tag along, or... Sure. There was no evidence other than the very limited statement that the victim in this case said that the warden of CoreCivic, the private contractor, asked him to help with rounds. And he was indeed helping with rounds. I certainly will concede that. So, I mean, you're stuck with that, right? That's the only evidence? Sure. It's hard to prove a negative, particularly when the other witnesses, the warden himself didn't testify at the trial, and I was stuck with the answer that the victim gave. Is it your position that to be a person assisting an officer or employee of the United States government must have a contract? No. I think that would limit it too much, but must be operating at least pursuant to some contract and some official role that that person has. I think here in this case it is way too ambiguous that the government is relying on just a catch-all provision, and perhaps, as Judge Carson pointed out, some conversation, which details that we don't know, that perhaps the victim in this case was asked to conduct these rounds. Does the record indicate generally how the Marshals Service worked with this facility in transportation of individuals to court? The Marshals Service didn't do any of the transportation. The transportation was conducted by the private contractor. All transportation outside of an inmate that was transported, all of it was done by the facility, none of it by the Marshals? Correct. The Marshals Service were never on premises, and they would go there occasionally, but they were not staffed on premises at all, were not responsible for any of the safety and security, other than, I guess, the overall responsibility of people within its care. What if this guy worked for a temp agency? What if they were short-staffed at the jail and CoreCivic didn't have a full-time employee to handle things, and they got with a temp agency and said, I need you to send me somebody out here to help us? I think, again, that would be to find, like, what is that person out there to do? Is this a temp agency and give me a temp who is going to be a corrections officer? Then I think it's okay. A temp agency, you're going to be the plumber, and we, the warden and I have already agreed, well, you can go along on the security rounds. That's what the Marshals do, and if you get beat up, you're going to be protected by the federal assault statute. I think it really comes down to the definition of what, or if I was, you know, I'm certainly not going to be up there, but if there was a rule to be made, I think it has to be defined by what the victim's role was before the assault. I mean, why were they there? It's not a but-for situation. Presumably, the victim in this case could have, if it wasn't part of his contract, could have refused. I would assume so. Right. I guess so. I mean, wouldn't as we look to the party's practical construction of the contract through their conduct, and if the warden asked him to go do rounds because they were short-staffed, and he was there as solely as an auditor or something adjacent to that, I mean, he could presumably have said, no, I'm not going to do it. That's not part of my contract. Sure. He certainly could have. And if he was going to do it, if he said, okay, yeah, I'm happy to do it, that would, we could infer from that that that was part of his contract. Right. I think it somewhat will undermine any cabining of where the statute goes to at that point, and cloaks any person who just happens to be there encountering something akin to a federal function and giving them this victim status for things that were traditionally or very easily and often are handled at the state level. Well, you could hypothesize situations where this could happen, and it would be a frolic and outside of his duties where maybe he's there doing an audit and one of the jailers was going around to do rounds, and he just wanted to go and said, hey, can I come along? And then in that case, and in that case, in that case, I'm not asking you a question, I'm sorry. Maybe he's, you know, not engaged in a government function. Maybe he's just on a frolic then. For sure. And I think that's kind of what we have. I was thinking of trying to think of an analogy. I used one. The trial obviously didn't work as well as I would have liked because I'm here. But thinking about if someone is just an intern for the warden, and they have a similar contract. I don't know what your internship is going to be. It's whatever I tell you it's going to be. And then he says, you know what, go along with Lieutenant Pizzui and do rounds. The marshals do that, clearly a federal function, and that person is assaulted. It takes me back to FIOLA and like, what is the statute designed to do? Is it designed to protect federal employees and federal functions? Certainly, we don't have a federal employee here. I hope that I at least will be able to convince everybody of that. Now, what is the federal function? I think we know in this case the federal function is security rounds. And protecting, you know, someone who is so far afield, and in this case, a private auditor, we'll call him, and nothing more, I don't see how that protects a federal function. But, you know, the statute, you know, at the end there's an or, and then the phrase brings in any person assisting such an officer or employee. That's pretty broad language, huh? In the performance of the duties of those, I think it's still limited by, it is incredibly broad, but to me the focus would be on the performance of official duties, and that's where it needs to be determined. What was, in this case, the victim's official duties? Is it designed by this catch-all, this side agreement with a private warden who the marshal service had no choice in selecting for this here? I mean, I think we take a step back, and, you know, I said earlier, obviously they have to outsource these things, but we have an outsourcing of the marshal service to a county, and then that county in turn outsources it to CoreCivic. We have no idea what that contract said. That was never even admitted. Right, but you don't dispute that being okay? No, I don't. I don't. But we don't know the terms of it. Perhaps there were limitations preventing any subcontracting that they have. We don't know that, and it certainly wasn't, you know, my burden to bring that out. I made the argument before not trying to make that again, but the point is that subsequent to the outsourcing to CoreCivic, then CoreCivic outsources it themselves in this ambiguity, and I'm not asking for a, you know, huge rule as to what the specifics are, because I don't need to in a case like this. On the facts that we have before it, I mean, certainly we don't have a federal officer. He's not law enforcement. He wasn't deputized in any fashion. He wasn't acting with a contract with the marshal service. He wasn't acting in cooperation or under control of the marshal service. There's no involvement of the marshals. He wasn't even contracted as a corrections officer, which I think is the key distinction here. In situations where we have, quote-unquote, you know, private citizens, if you will, who have been victims of assault, they've all been contracted as corrections officers. That's not what we have here. The cases before, sorry. Is any part of your position that the statutory expression, any person assisting such officer or employee, that officer or employee refers to a human being, so that the statute could constitute as the person has to be assisting a deputy marshal or a direct employee of the marshal's office? I think it can be an agency. I think that's been decided. It doesn't need to be a specific individual employee. I think it can be an agency. Was there a state investigation in this matter? Does the record indicate there was a state investigation of this matter? I believe that it was referred to, I think, the district attorney's office out there, if I recall. I'm not certain, Judge. All right. You wanted to reserve some time? Yes, I do. Thank you very much. I appreciate it. Good morning, Your Honors. May it please the Court, Maria Steitler on behalf of the United States. In this case, the victim, JF, was assaulted while he was conducting security rounds at a detention facility that held federal pretrial detainees for the United States Marshals. JF was only at that facility because of the facility's contract with the Marshals. JF was only conducting rounds in that unit on that day because the unit exclusively held federal pretrial detainees for the Marshals. And the inmate who assaulted JF, Anthony Hernandez, was only there because he had been ordered detained by a federal court pending federal charges. Sufficient evidence supports the jury's decision that JF was assisting federal officers when he was assaulted. This Court has recognized that cases like these require a fact-specific analysis, and no case will turn on any specific factor. Defendant doesn't dispute that JF's actions that day, the security rounds, were assisting the United States Marshals Service in their performance of official duties. Under the statutes, I believe that might alone, defendant's concession, be enough for this case to support the jury's verdict. But instead, defendant challenges the fact that JF was a contractor and that he wasn't contracted to perform security rounds. This limitation is unsupported by the statutory language, by the case law, by common sense, but moreover, it's also directly contradicted by the jury instructions that the juries were given, which they were instructed that the victim had to be, they must find that the victim was then engaged in the scope of his official duties and not acting independently. The official duties, is that referring to the contract between JF and CoreCivic, or are we looking at the official duties of a U.S. Marshal guarding a facility? Under the statutory language, the official duties refer to the Marshals, but in the jury instructions, as the Court was given, and these were instructions that the United States didn't endorse, but we believe that they're helpful now in responding to defendant's argument here. The Court did instruct that in addition to the victim performing a duty that assisted the United States Marshal in the performance of their official duties, the victim also had to be then engaged in the scope of his official duties. And so we have two different sets of official duties that the jury was instructed on. And it's your position that answers the frolic? Yes, Your Honor. The fact that the jury was specifically instructed on this point and specifically, we can presume, rejected defendant's argument about a frolic. But as I understand it, you did not agree with that jury instruction at the time it was given. That's right, Your Honor. I don't think it's necessary under the language of the statute, but I do think it helps to the extent this Court is concerned about whether there was some sort of frolic. It helps put that to rest. What does the record indicate how that jury instruction came about? I believe that the parties disputed this issue vigorously. Defendant moved for dismissal under Rule 29. And then the judge, in considering defendant's motion for dismissal, rejected the motion but felt that that jury instruction was appropriate to capture the, you know, I think the sum of defendant's arguments and also some of the cases perhaps from out of the circuit. So was it a theory of the case instruction that the Court appeared to see as being endorsed by the defendant? I don't want to represent defendant's position here, but I think neither party suggested that instruction. I think defendant disputed some of the language of that instruction, but of course they're not disputing that jury instruction today. And did not specifically object to that part of the instruction that talked about the official duties of the victim? I think that the defendant wanted the language not acting independently to be included in the instruction. And I believe that, and I didn't review this closely before today. I apologize. I think defendant might have also proposed some additional language, and the Court decided on not acting independently as a bit of a compromise between defendant's original conception and the language that, and the government's position, which was that none of this is necessary. Did the defendant object to the instruction? I think the defendant. But to that part of the instruction? You know, sometimes these situations are fluid. I don't know whether the defendant lodged a formal objection, but of course the defendant did not challenge that instruction in his brief before the oral argument. So to the extent he did believe that that language is incorrect, we think that it would be waived. Would every employee in the facility be covered by this provision? I don't think so, because there was record evidence, first of all, that the facility held state detainees as well. And so individuals who were there solely guarding state detainees who were assaulted by a state detainee wouldn't be protected. There'd be no basis for protection for that under the statute. But I take it your position would be unless so instructed by the director of the facility. Of course, Your Honor. Yes. And we do have that uncontroverted evidence here. We also have testimony from one of the facility, the facility investigator, who testified that he frequently saw the victim conducting security rounds. And then, of course, jails are secure, controlled environments. And it's unlikely that, you know, jails are not really the right environment for a frolic, because they are so controlled. Does your unless proviso include the cafeteria worker or the plumber or the medical staff? What was, did you, meant the what staff? The cafeteria worker or the plumber. In other words, if somebody's asked by the management to help guard inmates, are they eligible? Are they protected by this statute? Well, Your Honor, I think it would always be a factual question that goes to the jury. And perhaps as it gets more and more separated from what might be a realistic situation, the jury might start to doubt. Well, here we have an auditor. He's less connected to the facility than the cafeteria kitchen. He was also an auditor with years of experience at BOP facility. And so it, you know, it makes sense. The jury would understand why he might be asked to step in and help out, especially because the record showed that it was short-staffed. What about a maintenance worker that needed to be at the cell to do some repair that, for the facility? What about that? You know, again, I think that we are getting a little bit separate from the facts here. But I think that there could be an argument that could be made. That's what we do. We hypothesize. I understand, Your Honor. And I do think that, you know, there could be an argument to be made that they are performing a federal function and helping to keep these facilities maintained for the federal detainees that are there. And if they were assaulted by a federal detainee, I think you could analogize it to the case out of the Second Circuit where the handyman was found to be performing a federal function because he was repairing a hotel room that was, I think, had been forfeited by the marshals, and he was attacked by someone living at the hotel there. So I do think those are arguments that could be made. But, of course, again, it is a factual question at the bottom that would come to the jury and whether a jury would buy the United States argument that somebody who was there maintaining the cell was facilitating a federal function would be a jury question. And I do think here, especially when you look at the way this happened, there were two people conducting security rounds that day. One, Lieutenant Bitsui, was an employee of CoreCivic, and it appears right now the defendant is not disputing that Lieutenant Bitsui would be entitled to federal protection. The other person was JF. And that day, while they were conducting security rounds, both of those individuals were performing the same federal function. There's no basis in the law, in the legislative history of this statute, which has actually shifted from the employed by the United States marshals to perform a federal function to today, which is just broad language, any person assisting federal function. And, of course, in this court's cases, there's no basis to distinguish between those two individuals provide a forum for protection for Lieutenant Bitsui and not for JF. So unless the court has any questions, I would ask that the court affirm the jury's verdict. Thank you. Thank you, counsel. Counsel Rebuttal? Yes. First, I just want to focus on the Matthews case that my colleague, Ms. Steigler, brought up, and that was the Handyman case out of the Second Circuit. The case is inapposite on the facts here. The Handyman in that case was directly contracted by the United States Marshal Service in that case, as well as the facility over which the Handyman was performing work was a marshal's facility, neither of which are present here. I know the court has looked for cases similar to this. Clerks have looked for cases. There's no case similar to this. But you agree that there is direct correlation with the expression federal function in the Second Circuit case? Yes. Yes. There may have been contracts there directly. They're not here, but the federal function was the same.  I mean, just think if some of the court securities officers downstairs were restraining somebody and I decided to jump in and help restrain them without any contract whatsoever, I'd still be performing a similar function as them, but I don't believe I should be protected by this. But perhaps some of the clerks – Well, that's Jerick Carson's frolic. Exactly. Thank you. But they would appreciate it. I'm there for them. I'm there. Whatever it takes, right? Federal protection and jurisdiction should not extend indefinitely. Submit that on these facts it would stretch federal jurisdiction beyond its congressional intent. Affirming a case like this also risks expanding federal law to criminalize conduct, which can and historically is and should be regulated by the local and state level. Thank you very much. I always appreciate this. Appreciate the argument. You're excused and the case is submitted. Thank you very much.